## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JAMES LAMAR STRICKLAND,**

      **Petitioner,**

**v.**                                          **Case No. 4:19cv002-RH/CAS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**
_____/

### <u>REPORT AND RECOMMENDATION TO DENY § 2254 PETITION</u>

On January 2, 2019, Petitioner, James Lamar Strickland, a prisoner in the custody of the Florida Department of Corrections, proceeding with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Respondent filed an answer with record exhibits on August 21, 2019. ECF No. 11. Petitioner filed a reply on January 8, 2020. ECF No. 20.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief and this § 2254 petition should be denied.

### Background and Procedural History

Petitioner was charged on May 17, 2011, by Amended Information

with two counts of armed robbery with a firearm occurring in Leon County,

Florida, on January 16, 2011.  Ex. 2 at 11.[1]  Jury trial was held August 6-7,

2012.  Ex. 3.  Petitioner was found guilty as charged.  Ex. 3 at 306; Ex. 2 at

41-44.  Petitioner filed a motion for new trial, which was heard just prior to

sentencing on October 9, 2012, and denied.  Ex. 2 at 45; Ex. 4 at 20.

Judgment was entered and Petitioner was sentenced on Count 1 as a

Prison Releasee Reoffender, pursuant to section 775.082(8)(b), Florida

Statutes, to life in prison, and to a concurrent sentence of life for Count 2.

Ex. 4 at 100; Ex. 2 at 52-60.  He was given credit for 594 days for time

served.  Ex. 2 at 57.

On direct appeal, Petitioner raised one issue: whether the trial court

erred in refusing to have the reference to "SPN 16536" removed from the

caption of the verdict form on the ground that it suggested prior criminal

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to Exhibits 1
through 39 submitted in conjunction with Respondent's answer.  *See* ECF No. 11.

activity and was an indicator of incarceration.  Ex. 5 at 8.  That issue was raised by objection at trial, Ex. 3 at 183 (volume II of August 7, 2012, trial), and in Petitioner's motion for new trial.  Ex. 2 at 45-48.  The Florida First District Court of Appeal affirmed per curiam without opinion on December 23, 2013.  The mandate issued on January 8, 2014.  Exs. 4, 5.  *See* Strickland v. State, 128 So. 3d 803 (Fla. 1st DCA 2013) (Table).

On March 13, 2015, Petitioner filed a counseled motion for post-conviction relief, and on April 29, 2016, an amended motion, under Florida Rule of Criminal Procedure 3.850, raising ten claims.[2]  Ex. 32, 35.  An evidentiary hearing was granted on claims 1, 2, 4, 5, 6, 8, and 10.  Claims 3, 7, and 9 were denied as insufficient as a matter of law.  Ex. 37.  After the evidentiary hearing on December 2, 2016, (Ex. 39), the court denied relief for the reasons stated on the record.  A written order was entered on December 14, 2016, denying post-conviction relief for the reasons stated on the record.  Ex. 38.  Petitioner appealed denial of post-conviction relief

---

[2] The claims raised in Petitioner's amended Rule 3.850 motion were: (1) ineffective assistance of counsel (IAC) for failing to move to suppress photo lineup; (2) IAC for failing to object to unfairly prejudicial testimony and evidence; (3) IAC for failing to move to strike juror for misconduct; (4) Brady violation depriving Petitioner of exculpatory evidence; (5) IAC for failing to investigate and prepare for trial; (6) IAC for failing to argue lack of proof of actual gun; (7) IAC for failing to object to prejudicial photo lineup; (8) IAC for failing to object to characterization of material offered to victims by perpetrator as pornography; (9) IAC for failing to object to reference to victims as college students; and (10) cumulative error.  Ex. 35.

on all the grounds set forth in the amended Rule 3.850 motion.[3]  Ex. 24.

The First District Court of Appeal affirmed per curiam without discussion on

September 28, 2018, and the mandate issued on December 26, 2018.

Exs. 28,  31.  *See* Strickland v. State, 258 So. 3d 387 (Fla. 1st DCA 2018)

(Table).

On December 21, 2015, prior to the determination of the amended

Rule 3.850 motion, Petitioner filed a petition for writ of habeas corpus in the

district court of appeal pursuant to Florida Rule of Appellate Procedure

9.141(c) alleging ineffective assistance of appellate counsel.[4]  Ex. 10.  The

district court of appeal denied the petition without opinion on October 19,

2016.  Ex. 16.  *See* Strickland v. State, 202 So. 3d 413 (Fla. 1st DCA 2016)

(Table).

On January 2, 2019, Petitioner filed his petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following

grounds for relief:

> (1) The State failed to disclose that Petitioner's truck had been
> searched; and the inventory of the vehicle would have provided
> exculpatory evidence in violation of Brady v. Maryland, 373

---

[3] *See supra* note 2.

[4] The claims of ineffective assistance of appellate counsel were: (1) failing to
appeal error in trial court's removal of a juror for cause over objection during voir dire;
(2) failing to appeal trial court denial of motion for judgment of acquittal; and (3) failing to
appeal evidentiary rulings made during trial that limited cross-examination.  Ex. 10.

U.S. 83 (1963), and Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution;

(2) Defense counsel rendered ineffective assistance by failing to investigate, research, and prepare for trial;

(3) Defense counsel rendered ineffective assistance by failing to move to suppress based on a tainted photo lineup and in-court identification;

(4) Defense counsel rendered ineffective assistance by failing to object to prejudicial evidence, failing to properly argue the State failed to prove Petitioner carried an actual gun, and failing to object to characterization of the magazines and DVDs offered to the victims as pornographic;

(5) Defense counsel rendered ineffective assistance by failing to move to strike a juror for misconduct;

(6) Defense counsel rendered ineffective assistance by failing to object to showing the jury a photo lineup where the photos appeared as "mug shots";

(7) Defense counsel rendered ineffective assistance by failing to object to identification of victims as college students;

(8) Cumulative Error;

(9) Appellate counsel rendered ineffective assistance by failing to argue on direct appeal trial court error in failing to sustain defense counsel's objections during jury selection;

(10) Appellate counsel rendered ineffective assistance by failing to argue trial court error in denying the motion for judgment of acquittal;

(11) Appellate counsel rendered ineffective assistance by failing to argue trial court error in evidentiary rulings during trial.

ECF No. 1.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim—
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). The Petitioner

must have apprised the state court of the federal constitutional claim, not

just the underlying facts of the claim or a "somewhat similar state-law

claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting

Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be

exhausted, "the petitioner must have given the state courts a 'meaningful

opportunity' to address his federal claim."  Preston v. Sec'y, Fla. Dep't of

Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim

in each appropriate state court in order to alert the state courts to the

federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995);

Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999).  The State must have been provided the

" 'opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights."  Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275

(citation omitted)).  "This rule of comity reduces friction between the state

and federal court systems by avoiding the 'unseem[liness]' of a federal

district court's overturning a state court conviction without the state courts

having had an opportunity to correct the constitutional violation in the first

instance."  O'Sullivan, 526 U.S. at 845; see also Picard, 404 U.S. at 275 ("If

the exhaustion doctrine is to prevent 'unnecessary conflict between courts

equally bound to guard and protect rights secured by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim). A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or

prejudice if necessary to correct a fundamental miscarriage of justice.

Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to

satisfy the miscarriage of justice exception, the Petitioner must show that a

constitutional violation has occurred that "probably resulted in a conviction

of one who is actually innocent"—that it is more likely than not that no

reasonable juror would have convicted him—which is a stronger showing

than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S.

298, 327 (1995).  This standard "thus ensures that petitioner's case is truly

'extraordinary.' "  *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is

"extremely rare."  Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state

court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181.

The state court's factual findings are entitled to a presumption of

correctness and to rebut that presumption, the Petitioner must show by

clear and convincing evidence that the state court determinations are not

fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is

not the province of a federal habeas court to reexamine state-court

determinations on state-law questions" and "[i]n conducting habeas review,

a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502

U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222

(2011) ("[W]e have long recognized that 'a "mere error of state law" is not a

denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21

(1982))).

Further, under § 2254(d), federal courts have "no license to

redetermine credibility of witnesses whose demeanor has been observed

by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S.

422, 434 (1983).  "Determining the credibility of witnesses is the province

and function of the state courts, not a federal court engaging in habeas

review."  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir.

2011).  Credibility and demeanor of a witness are considered to be

questions of fact entitled to a presumption of correctness under the AEDPA

and the Petitioner has the burden to overcome the presumption by clear

and convincing evidence.  *Id.*

 For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at

690).

       To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  466 U.S. at

694.  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' "  Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550

U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. Strickland, 466 U.S. at 697.

### Grounds 1 & 2: Brady and IAC in Failure to Investigate and Prepare

Petitioner contends in Ground 1 that the State violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose favorable evidence.[5] He argues that the State failed to disclose that Petitioner's truck had been searched in connection with a separate offense the day after the incident in this case, and that the inventory of the vehicle would have provided exculpatory evidence. ECF No. 1 at 3.

---

[5] Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that failure to disclose material evidence favorable to the accused violates due process). Evidence is material if there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different. Strickler v. Greene, 527 U.S. 263, 280 (1999). To meet this standard, a defendant must demonstrate that the suppressed evidence " 'could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict.' " *Id.* at 290. The prosecutor has a duty to learn of any evidence favorable to the defendant and must disclose it even if not requested. *Id.* at 280-81.

The robbery victims testified at trial that the perpetrator approached them in his truck while they were walking after visiting a bar. They said the perpetrator wore a hoodie and told them he lived in his truck, and that he offered to sell them pornographic material but, when unsuccessful, pulled a gun and demanded money. Ex. at 92-94, 119-120 (volume I of August 7, 2012, trial). Petitioner contends that during discovery in the present case, law enforcement affirmatively told defense counsel that no search was done of Petitioner's truck when he was arrested on unrelated charges the day after the robbery. ECF No. 1 at 3-4. He also argues that during trial, law enforcement and the prosecutor asserted that the truck was not searched. *Id.* at 3. He argues that after his conviction became final, he learned that a search had been done of the truck and that the inventory showed no hoodie, gun, or pornographic material was found in the truck. *Id.* at 4.

Petitioner also contends in Ground 1 that the state failed to provide exculpatory evidence in the form of a list of vehicles generated by law enforcement that matched the description given by the victims, that being a green Ford Ranger truck, or one similar to it, with extended cab and a Florida license beginning "BJM." ECF No. 1 at 4. Petitioner's truck was a green Ford Ranger with a Georgia tag beginning with "BJM." Petitioner

argues that a list of the other vehicles generated by the search that met the criteria given by the victims was exculpatory and could have provided the jury with reasonable doubt.  *Id.* at 4-5.  The search that produced that list was not retained and could not be provided to Petitioner.

In Ground 2, Petitioner contends that trial counsel rendered ineffective assistance by failing to investigate the discovery provided in the second case which disclosed the search of the truck and inventory.  He argues that counsel rendered ineffective assistance by the failure to find and present evidence of the search and inventory in his defense at trial. ECF No. 1 at 9-13.

Petitioner raised both these claims in his amended Rule 3.850 motion, as Claims 4 and 5, Ex. 35 at 12, 15, and an evidentiary hearing was held.  Ex. 39.  Concerning the search of the truck, defense counsel testified at the hearing that during trial preparation in this case, he received a copy of Officer Herbert Wester's report, admitted as Defendant's Exhibit 1 at the hearing.  Ex. 39, Def. Ex. 1 attached to transcript.  In it, Officer Wester stated that Petitioner's truck had been impounded the day after the January 16, 2011, incident due to Petitioner's arrest in another matter, and the truck had been released without being searched.  Ex. 39 at 83. Defense counsel testified that he proceeded in the present case based on

that assertion that no search of the truck had been done.  *Id.*  He said that if

he had been advised that the truck had been searched and that the

inventory did not show the hoodie, pornographic materials, and gun

testified to by the victims, he would have emphasized that to the jury to

support his defense theory of lack of evidence of Petitioner as the

perpetrator and to provide a basis for reasonable doubt.  Ex. 39 at 104.  He

argued that his defense of misidentification and reasonable doubt would

have been stronger with evidence that the items were not in the truck,

which is where the perpetrator told the victims he lived.  Defense counsel

testified that if he had known of the inventory, he could have argued to the

jury that the search of the vehicle done shortly after the January 16, 2011,

incident did not disclose the items, which would still have been in the

vehicle if Petitioner lived in his truck.  Ex. 39 at 99-100.  Counsel testified

that he did not think the prosecutor knew that the truck had been searched.

Ex. 39 at 104.

Defense counsel did not dispute that he had been provided with

discovery in the January 17, 2011, case in which he also represented

Petitioner.  Ex. 39 at 98.  That discovery disclosed the search and truck

inventory, but counsel said he did not cross reference the January 16,

2011, robbery case with the separate January 17, 2011, theft case.  He

testified that he did read the report concerning the January 17, 2011, theft case, which did not go to trial.  Ex. 39 at 99.  He said Petitioner entered a plea in that case and the case was "not high on my radar."  *Id.*  He did not think the two cases were relevant to each other.  *Id.*  He admitted he did not use any materials from the second case in preparation for trial of the robbery charges.  *Id.*  He said, "I don't have an excuse for that or an explanation for it."  *Id.*

Petitioner presented the testimony of board certified criminal defense lawyer Michael Kessler, who testified that if a lawyer is representing a client on charges occurring on one day and was also representing him on charges for offenses occurring the very next day, the lawyer should look at both files to see if anything on day two is relevant to the charges on day one.  He also testified that if counsel had the truck inventory, he could have more successfully argued that the evidence did not show Petitioner lived in his truck and was not the perpetrator described by the victims.  The absence of the items would have been a main feature of the defense. Ex. 39 at 132-35.

Kessler testified that because the inventory was disclosed in a discovery request in the second case, both the prosecutor and the defense attorney had constructive knowledge of it.  Ex. 30 at 136, 138-39.

He also testified that because counsel had constructive knowledge of the

search because it was in discovery in case two, he was deficient in not

finding it and using it in an effective defense strategy.  Ex. 39 at 142.

Kessler opined that the risk of bringing in the evidence of the day two crime

(theft of metal) did not outweigh the risk of conviction for life felonies, so it

would not have been a reasonable tactical decision to leave out the

inventory search for that reason, had counsel realized the evidence

existed.  Ex. 39 at 143.

As to the other aspect of Petitioner's <u>Brady</u> claim, defense counsel

also testified at the evidentiary hearing that the State could not provide him

with a list of all the vehicles they identified that matched the description of

the perpetrator's vehicle and had a license tag beginning with BJM

because they kept no record of that search.  Ex. 39 at 107-08.  He testified

that he learned at deposition prior to trial that once the officer exited out of

the search screen, the only way to repeat it would be to run the same

internet-based search and hope the results would be the same.  Ex. 39 at

100.  Counsel said if he had been provided the information relied on by law

enforcement to create a list of possible suspects, and if the list included

other matching green vehicles with a tag beginning with BJM, it would have

bolstered his defense of misidentification and reasonable doubt.  Ex. 39 at 108.

The post-conviction court denied both the Brady claims and the ineffective assistance of counsel claim, stating first, "I guess the information about the search was available to Mr. Conrad, although, today he could not say one way or the other whether he did have Defendant's Exhibit 2, which is inventory search. . . .  But, not having that he was able to still argue [ ] the lack of evidence and police incompetence on top of it. "  Ex. 39 at 164. The court found that the defense was able to argue to the jury that the State had not produced the gun, the hoodie, or the pornographic materials that the perpetrator had in the truck, thus supporting the defense of reasonable doubt and misidentification.  Ex. 39 at 165.  The judge found that lack of the inventory showing no hoodie or pornography had "no effect at all."  Ex. 39 at 165.  The court also found that if the truck inventory had been submitted, evidence of it would have presented the risk of the jury hearing about the theft Petitioner committed on January 17, 2011, before his truck was impounded.  *Id.*  Finally, the post-conviction court concluded that both defense counsel and the expert witness testified that the strategy of bringing in the search was risky in that it could open the door to evidence of the uncharged theft.  For these reasons, the Court found there was no

Brady violation and no ineffective assistance in preparation of trial relative
to the search and inventory.  Petitioner appealed denial of the claims and
the State district court of appeal affirmed.  Ex. 28.

Respondent contends that even if the inventory had been introduced
into evidence at trial showing no evidence of a hoodie, pornography, or
gun, the State would have argued and the jury could have found the items
were discarded or placed elsewhere in the interim between the January 16,
2011, robbery and the January 17, 2011, search of the truck.  ECF No. 11
at 23.  Respondent contends that Petitioner failed to demonstrate in State
court that evidence of the search of the truck would have created a
reasonable probability that the result of the trial would have been different.
ECF No. 11 at 24.

At trial, Officer Wester testified on cross-examination that he did not
go to Petitioner's address in Cairo, Georgia, to look at the vehicle and
never sought a warrant to search it.  Ex. 3 at 218 (volume II of transcript of
August 7, 2012, trial).  The following cross-examination then occurred:

> **Q** So you never found a gun?
> **A**  No, sir.
> **Q**  You never found a hoody?
> **A** No, sir.
> **Q** and you never found a porno magazine or a porno DVD
- - in this case?

**THE COURT:**  Do we need to take a sidebar?

**MR. HUTCHINS** [prosecutor]: No.  Could he be specific as to if he's asking about what he found in the car, or anywhere?

**THE COURT:**  Okay.

**BY MR. CONRAD** [defense counsel]:

**Q** Did you ever find a porno DVD, a hoody, a gun, or magazine associated with Mr. Strickland?

**A** No, sir.

Ex. 3 at 219 (volume II of transcript of August 7, 2012, trial).  On redirect examination, Officer Wester testified that he met with the victims and obtained a positive identification of Petitioner by one victim about five days after the robbery.  *Id.* at 222.  When asked if he had a reasonable belief that evidence was going to still be located in Petitioner's vehicle after that time, Officer Wester testified that he did not.  *Id.* at 222-23.  However, the search of Petitioner's vehicle and the inventory was done just over one day after the robbery, but because neither the prosecutor nor defense counsel were aware of the search, Officer Wester was not asked to address the likelihood of finding the cited evidence still in Petitioner's vehicle after that time frame.

During closing argument, defense counsel argued lack of evidence, stating:

**[DEFENSE COUNSEL]:**  . . . . Where is the hoody?  I mean, you've' got an officer who says there's no reasonable

cause for me to look for a search warrant just a few days later on a car in Cairo. I'm not going to go to Cairo and look for - - and look at a car. No evidence that he even tried. And the question's put to him, well, are you required to do that. And, no I'm not required. Well, heaven forbid we ever ask somebody that works for the government to do something that's not required. Heaven forbid we ask them to go back and do a complete investigation. Heaven forbid we ask them to pick up the phone and call the Cairo sheriff, hey, can you get a judge to get a search warrant for this car. Can I go look for this car. They just want to assume that there's some firearm in there. They didn't even go take a picture. I had to put the pictures into evidence to show what the actual truck that Mr. Strickland owns looked like.

Ex. 3 at 292 (volume II of transcript of August 7, 2012, trial).

The first victim to testify about the January 16, 2011, robbery testified that in the early morning hours of January 16, 2011, he was leaving a bar near Florida State University where he was a student. Ex. 3 at 88-89 (volume 1 of transcript of August 7, 2012, trial). He had driven there, so he did not drink any alcohol. *Id.* at 89. He left the bar with a friend he met at the bar and who offered to give him a ride. While walking toward where the car was parked, they were approached by a man driving a green truck-type vehicle. *Id.* at 90-92. He was an older white male with black and gray hair and a mustache. *Id.* at 103. The dome light was on in the vehicle. *Id.* at 113. The victim testified that the man rolled down his passenger side window and said he lived in his truck and asked the two victims for money, but they said they had none. The man then offered to sell or trade them

pornographic material, but they declined.  *Id.* at 92.  The man then said

"well, what if I showed you a gun now."  *Id.* at 93.  The victim testified that

he saw the gun and both victims gave the man money.  *Id.* at 94-95.  When

the man told them to walk away, they started walking and the man drove

off.  They then ran and found a university police officer to whom they

reported the crime and described the vehicle and the perpetrator.  *Id.* at 96.

The victim testified that he later talked to officers at the Tallahassee Police

Department and was shown a photo lineup.  He testified he was told not to

identify anyone if he was not sure, and because it was between two of the

photos numbered three and four, he did not make an identification.  *Id.* at

98.

The second victim to testify said he was a student at Florida State

University.  *Id.* at 116.  He left the bar, where he had consumed several

alcoholic beverages, in the early morning hours with the first victim and was

approached by a man in what looked like an older green Ford Ranger

vehicle.  *Id.* at 118.  The man pulled up, flipped on the interior light, and

asked for money.  *Id.*  The man was wearing a hoodie with a pocket in the

middle.  *Id.* at 120.  When the man pulled a gun, it looked like a real gun

and the victim believed it was real.  *Id.*  It did not have an orange tip, as toy

guns have.  *Id.* at 141.  As the victim was running away, he testified he saw

the license tag, which was a Florida or a Georgia tag, and noted the first three letters of the tag, although he agreed that he reported to police it was a Florida tag.  *Id.* at 122, 135.  The second victim was shown the photographic lineup by officers and identified the perpetrator as photo number 4, which was a photograph of Petitioner, as later testified to by Officer Wester.  Ex. 3 at 123 (volume 1 of August 7, 2012, trial); Ex. 3 at 193 (volume II of August 7, 2012, trial).  The second victim also identified Petitioner in court as the man who robbed him and his friend.  Ex. 3 at 127 (volume I of August 7, 2012, trial).

The post-conviction court's denial of the Brady claim for failure to disclose the search and inventory was not unreasonable.  Petitioner's attorney was provided the search and inventory, albeit in the separate case in which he also represented Petitioner.  Further, even if he could have shown the jury that no hoodie, pornography, or gun was found, such does not establish a reasonable probability that the jury would conclude Petitioner was not the perpetrator.  The items could have been relocated in the approximately 34 hours between the robberies and the search of the truck.  Moreover, even though the victims testified that the perpetrator told them he lived in his car, there was no other corroboration of the truth of that statement, which may have been made only to seek sympathy when he

first asked the victims for money.  Petitioner's vehicle matched the description given by the victims, as did Petitioner's age, hair color, and facial appearance.  His license tag began with the letters BJM.  Officer Wester testified that he had knowledge that Petitioner was in the area of Tallahassee around the time of the robberies.  Petitioner was identified in a photo lineup and in court by one of the victims.

Petitioner has not demonstrated a reasonable probability sufficient to undermine confidence in the result that, but for the prosecutor's failure to discover and provide the inventory specifically in this case, and but for counsel's failure to discover and present the inventory showing no hoodie, pornography or gun in the vehicle, the outcome of the trial would have been different.  Nor was a <u>Brady</u> violation shown by the failure of police to be able to provide a copy of internet search results they did not retain and could not accurately reproduce.

To meet the <u>Brady</u> standard, a defendant must demonstrate that the undisclosed evidence " 'could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict.' " <u>Strickler</u>, 527 U.S. at 290.  Similarly, to meet the prejudice prong of <u>Strickland</u>, Petitioner must show that but for deficient performance, there exists a reasonable probability—one being sufficient to undermine

confidence in the outcome—of a different result.  Based on these standards, the state court's denial of the <u>Brady</u> claims as alleged in Ground 1 and the ineffective assistance of counsel claim as alleged in Count 2 has not been shown to be unreasonable.

Because Petitioner has failed to show that the adjudication of the claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, Grounds 1 and 2 should be denied.  *See* 28 U.S.C. § 2254(d).

## **Ground 3: Failing to Move to Suppress Identification**

Petitioner contends in Ground 3 that his defense counsel rendered ineffective assistance by failing to move to suppress identification of Petitioner based on a tainted pretrial photo lineup and tainted in court identification.[6]  ECF No. 1 at 13.  He argues that the photographic lineup identification was tainted because the two victims were not shown the

---

[6] Petitioner erroneously refers to a "tainted show-up identification," ECF No. 1 at 17, but there was no "show-up identification."  A "show up" procedure occurs when the police present the victim with a single suspect at the scene or shortly after the crime. *See, e.g.*, <u>Perez v. State</u>, 648 So. 2d 715, 719 (Fla. 1995).

lineup until five days later, they arrived together and left together, and were allowed contact.  *Id.* at 14.  He argues that the identification procedure was suggestive and that it gives rise to a substantial likelihood of misidentification.  *Id.* at 14-15.  He cites as a basis to support the charge of likely misidentification the facts that when the robbery occurred it was dark, the interaction was of short duration, the descriptions of the suspect were inconsistent, the only victim who identified Petitioner had consumed alcohol, and none of the persons depicted in the photo lineup were wearing glasses as the victims described the perpetrator.  *Id.* at 15.

This claim was raised in Petitioner's amended Rule 3.850 motion (Ex. 35 at 38), and an evidentiary hearing was held on the claim.  Ex. 39. Defense counsel testified at the hearing that he considered filing a motion to suppress identification of Petitioner.  Ex. 39 at 86.  He conferred with a person who had given a seminar on witness identification and after relating the facts, she indicated she did not think he had a good argument.  *Id.* at 87-88.  He also retained a board certified appellate lawyer who opined that such a motion would not be successful.  *Id.* at 88.  The consensus was that it would be better to simply highlight the fact that one victim could not identify the perpetrator.  *Id.*  The expert witness presented at the evidentiary hearing testified that in his opinion trial counsel did not have a

good faith basis on which to move to suppress the photo lineup because it was not suggestive.  Ex. 39 at 140.

The state court denied the claim, concluding that there was no evidence that the photo lineup depicted in Exhibit 3 admitted at the hearing was unnecessarily suggestive.  Ex. 39 at 162.  The court noted that the witnesses were shown the photographs separately, as Officer Wester testified at trial.  *Id.* (citing Ex. 3 at 191, 222 (volume II of August 7, 2012 trial)).  The court also noted that Petitioner's expert witness was of the same opinion.  Ex. 39 at 163.  Thus, the state court found there was no deficient performance or prejudice in defense counsel's failure to move to suppress the identification based on a photo lineup that was suggestive or likely to produce a misidentification.  The state district court of appeal affirmed without discussion.  The state court adjudication has not been shown to be contrary to any federal law or unreasonable in light of the evidence.

At trial, Officer Wester explained that he showed the photo lineup to each victim separately and cautioned each of them that the suspect may or may not be depicted.  Ex. 3 at 191 (vol. II of August 7, 2012, trial).  He advised each that they needed to be absolutely sure before they identify any photo as the person who robbed them.  *Id.*  The first victim testified at

trial that when he viewed the photo lineup, he could not decide between two of the six photos so he could not make a "hundred percent" identification from the lineup. *Id.* at 102 (volume I of August 7, 2012, trial). He did not make an in-court identification. The second victim testified that he picked Petitioner's photo out of the photo lineup after being cautioned that the perpetrator's photo may not be there. *Id.* at 123. He was also told he had to be absolutely sure before he identified one as the perpetrator. *Id.* at 125. The second victim testified that he picked photo number four, which was Petitioner, and he identified Petitioner in court as the person who robbed him. *Id.* at 127. Both victims testified that the perpetrator had on the interior car light so they could see his face, clothing, and items in the car. *Id.* at 113, 120. Tallahassee Police Officer Frederick Sapiera testified at trial that he responded to a call from a university police officer to whom the victims first reported the robbery. Officer Sapiera spoke to the two victims, who did not appear intoxicated. Ex. 3 at 65 (volume 1 of August 7, 2012, trial). He obtained sworn written statements from the victims. *Id.* at 77.

Petitioner has not demonstrated that the state court's adjudication of this claim was contrary to any federal law as established by the Supreme

Court or that it was an unreasonable determination of the facts in light of the record.  For this reason, Ground 3 should be denied.

### Ground 4: Ineffective Assistance in Failure to Object to Evidence and Failure to Properly Argue the Evidence

Petitioner next contends that defense counsel rendered ineffective assistance by failing to object to certain unfairly prejudicial evidence, failing to properly argue the State did not prove Petitioner carried an actual gun, and failing to object to characterization of the magazines and DVDs as pornographic.  ECF No. 1 at 17-20.

Specifically, he first contends that defense counsel should have objected to Officer Wester's testimony that Petitioner, a Georgia resident, was "in Tallahassee" at the time of the offenses because, he asserts, that was a reference to unrelated theft charges that arose from Petitioner's conduct the day after the robberies.  *Id.* at 18.  Petitioner also argues that defense counsel should have objected to Officer Wester's reference to a criminal database he used to search for vehicles matching the description given by the victims.  *Id.*  This aspect of Petitioner's Ground 4 was raised in Petitioner's post-conviction motion in his claim 2, on which an evidentiary hearing was granted.

At the hearing, defense counsel testified that he did not object to Officer Wester's reference to Petitioner being in the area because he does

not think the judge would have sustained the objection and the comment did not indicate Petitioner was incarcerated.  Ex. 39 at 106.  He said an objection would have brought unneeded attention to the comment.  Ex. 39 at 107.  The post-conviction court denied this aspect of Petitioner's post-conviction motion, finding no deficient performance of counsel because Officer Wester only testified that Petitioner was in Tallahassee and because there was no testimony that Petitioner's vehicle was identified through a criminal database.  Ex. 39 at 163.  These findings are supported by the record.

Officer Wester was asked at trial whether in the course of his investigation he learned that Petitioner was in Tallahassee at the time of the crimes.  Ex. 3 at 194 (volume II of August 7, 2012, trial).  He testified, "Yes, sir.  It appeared as though he was in Tallahassee at that time."  *Id.* Officer Wester did not elaborate on how he learned that information.  After the State rested and the trial court denied the motion for judgment of acquittal, defense counsel noted that he had not objected at the time because it would have brought undue attention and that he could not cross-examine on the statement because it would open the door to evidence of Petitioner's thefts.  He stated that he was now objecting and moving the court to prohibit the prosecutor from arguing to the jury that Petitioner was

in the area at the time of the crimes.  Ex. 3 at 254-56 (volume II of August

7, 2012, trial).  The trial judge denied the motion in limine.  *Id.* at 256.

As to Petitioner's claim that the jury heard Officer Wester used a

criminal database used to identify Petitioner's vehicle, the post-conviction

court was correct that the jury heard no such characterization.  At trial,

Officer Wester testified that he used a "standard database," referred to as

IIQ, where he could input parts of a license tag or other bits of information

about a vehicle and the database would provide a list of "possible persons

or vehicles.  Ex. 3 at 188-89 (volume II of August 7, 2012, trial).  Officer

Wester did not explain what IIQ stood for or what sort of database it was

other than it was a computer database.  He testified that it was through this

database search that he developed Petitioner as a suspect.  *Id.* at 189,

193-94.  On cross-examination, defense counsel asked about the database

but did not elicit any testimony that IIQ was a criminal database.  *Id.* at 198.

The post-conviction court's denial of this first aspect of Ground 4 was not

unreasonable in light of the evidence of record in the case.

Petitioner's second specific allegation in this Ground is that trial

counsel rendered ineffective assistance by failing to argue to the jury that

the State failed to prove the gun was an actual firearm and not a replica or

toy.  ECF No. 1 at 19.  This contention was raised in Claim 6 of the

amended Rule 3.850 motion and an evidentiary hearing was provided.  At the hearing, defense counsel testified that he believes he cross examined about the gun possibly being a toy, but did not expressly address whether he actually made that argument to the jury.  Ex. 39 at 105-06.  He said, however, "Every gun case I have, where they don't recover the gun, I argue that."  *Id.*  The post-conviction court denied the claim, noting only that the argument was made in the motion for judgment of acquittal and denied.  Ex. 39 at 165.

At trial, defense counsel cross-examined each victim as to the appearance of the gun.  The first victim testified that he did not know if the gun was a revolver and that he did not know if it was real.  Ex. 3 at 109 (volume I of August 7, 2012, trial).  On redirect, the victim testified he believed the gun was real.  *Id.* at 114.  The second victim testified that the gun looked real, and on cross-examination said that he did not know the difference between a revolver and an automatic pistol, but that it "looked a lot like a real gun."  *Id.* at 120, 137.  On redirect, he explained that the gun did not have an orange tip like toy guns do and the gun did not look like a paintball gun.  *Id.* at 141.  He said, "It was normal - - it was a handgun" and that at the time he believed it was real.  *Id.*  Counsel argued in his motion for judgment of acquittal after the case-in-chief that the state failed to prove

that the gun was real, which is an element of robbery armed with a firearm.

Ex. 3 at 227 (volume II, trial of August 7, 2012).  He renewed the motion for

judgment of acquittal and it was again denied.  *Id.* at 253-54.

During closing argument, trial counsel argued to the jury in pertinent

part as follows:

> Lack of evidence. Now, let me take a second to talk about
> this firearm.  There's a question on the verdict  form, you know,
> is it a firearm.  Well, what you got is two people who said, in
> response to the State's question, do you believe it was a
> firearm.  Yeah, I believe it.  And then my question,  could it
> have been a toy. Well, I guess it could have. 'All right. So if they
> believe but they don't know, and their witness, under oath,
> allows that maybe it's a toy gun, they don't know, have they
> proved that beyond a reasonable doubt?  No. Again, beyond
> and to the exclusion of a reasonable doubt.  They can't exclude
> it when the guy sits right there on the stand and says I don't
> know. That doesn't exclude anything.

Ex. 3 at 291-92 (volume II, August 7, 2012, trial).  The jury was instructed

that to find Petitioner carried a firearm, they must find that the weapon was

designed to or may readily be converted to expel a projectile by action of

an explosive.  *Id.* at 261.  Thus, the instruction precluded the jury from

finding Petitioner carried a firearm if they found the evidence proved it was

a toy.  The jury found on the verdict form that Petitioner had actual

possession of a firearm during the commission of the offense.  Ex. 2 at 41.

Because trial counsel did cross-examine the victims at length

regarding the nature of the gun, made motions for judgment of acquittal

arguing lack of proof of an actual firearm, and argued to the jury that the victims (at least one victim) testified the gun could have been a toy, the state court's denial of this aspect of Petitioner's ineffective assistance of counsel claim was not unreasonable.

In the last specific allegation of this ground, Petitioner argues that trial counsel rendered ineffective assistance by failing to object or move in limine to preclude the victims' testimony that the perpetrator offered to sell them materials characterized as pornographic magazines and DVDs.  ECF No. 1 at 19.  This contention was raised in Petitioner's amended Rule 3.850 motion in Claim 8 on which an evidentiary hearing was granted.  Ex. 35 at 23.  Trial counsel testified at the hearing that he cannot recall if he and Petitioner discussed objecting to any reference to pornography, but if Petitioner had said he must object, "I would have said no, I'm not going to do that."  Ex. 39 at 105.  He did not explain further.  The state post-conviction court denied the claim, finding based on the record that the victims did not characterize the materials as pornographic, but were relating what the perpetrator said.  Ex. 39 at 165-66.

At trial, the first victim testified that after the perpetrator asked for money and was refused, "the person said . . . I have - - I have some porno magazine that you might be interested - - I can sell you or trade you for

money."  Ex. 3 at 92 (volume 1 of August 7, 2012, trial).  The second victim

testified that after he refused to give the perpetrator money, the perpetrator

"then proceeded to try and trade us or sell us pornographic material that he

showed us."  *Id.* at 119.  These statements attributed to the perpetrator,

later identified as Petitioner, were admissible to establish the context in

which the charged acts occurred.  *See* Smith v. State, 126 So. 3d 1038,

1045 (Fla. 2013).  Evidence of a defendant's prior bad acts is admissible

"to establish[ ] the relevant context in which the [charged] criminal acts

occurred" and to "paint[ ] an accurate picture of the events surrounding the

crimes charged."  McGirth v. State, 48 So. 3d 777, 787 (Fla. 2010) (internal

quotations omitted; first and second alterations in original); *see also*

Victorino v. State, 23 So. 3d 87, 99 (Fla. 2009) ( "Dissimilar fact evidence of

uncharged misconduct—which is governed by [Florida Statute] section

90.402's general rule of relevancy—is admissible to 'establish[] the relevant

context in which the [charged] criminal acts occurred.' " (quoting Caruso v.

State, 645 So. 2d 389, 394 (Fla. 1994))).

Because the evidence of Petitioner's statements at the time of the

offense were relevant to paint an accurate picture of the events

surrounding the crimes, trial counsel's objection or motion in limine would in

all likelihood have been denied under Florida law.  Counsel is not deficient

for failing to make a meritless objection.  Denson v. U.S., 804 F.3d 1339,

1342 (11th Cir. 2015).  *See also* Freeman v. Att'y Gen., 536 F.3d 1225,

1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a

meritless claim. . . .") (citation omitted).  Thus, the state court's denial of

this claim was not unreasonable.  As noted earlier, "[t]he question 'is not

whether a federal court believes the state court's determination' under the

Strickland standard 'was incorrect but whether that determination was

unreasonable—a substantially higher threshold.' "  Mirzayance, 556 U.S. at

123 (quoting Schriro, 550 U.S. at 473).  It is a "doubly deferential judicial

review that applies to a Strickland claim evaluated under the § 2254(d)(1)

standard."  Mirzayance, 556 U.S. at 123.

Because Petitioner has failed to demonstrate that the state court's

adjudication of these claims of ineffective assistance of counsel is contrary

to any federal law as established by the Supreme Court or is an

unreasonable determination of the facts in light of the record, habeas relied

on Ground 4 should be denied.

### Ground 5: Failing to Move to Strike Juror for Misconduct

Petitioner contends that defense counsel rendered ineffective

assistance by failing to move to strike a juror for misconduct.  ECF No. 20.

He argues that during the trial after the close of evidence, Juror 5 disclosed

to the bailiff that he had failed to advise the court that a relative had been convicted of a crime.  He alleges without specifics that the juror "deliberately failed to disclose his bias."  *Id.* at 21.  Petitioner argues that defense counsel failed to inquire into bias and was deficient for that reason. *Id.*  The claim was raised in Petitioner's first Rule 3.850 motion, Ex. 32, and was stricken as facially insufficient with leave to amend.  Ex. 34.  The claim was raised again in Petitioner's amended Rule 3.850 motion, Ex. 35, but was again found to be insufficient as a matter of law and denied.  Ex. 37 at 67.  Neither order explained the deficiency.

The amended Rule 3.850 motion alleged that the juror disclosed that he had been "dishonest" in answering the court's standard questions during voir dire by withholding information that a relative had been convicted of a crime.[7]  Ex. 35 at 44.  Petitioner contended in his post-conviction motion, as he does here, that counsel should have inquired into juror bias before deciding not to strike the juror, and that the juror in question served as foreperson of the jury.

Although the post-conviction court summarily denied the claim as legally insufficient as pled, the court addressed the claim at the conclusion

---

[7] The record does not support the characterization that the juror or the court characterized the failure to disclose as "dishonest."

of the evidentiary hearing by stating:

> I've already made a ruling on Count 3 because it's clear that that was a tactical decision and that there was absolutely no prejudice from a juror that didn't disclose during jury selection, but later disclosed that he had a relative that had been convicted of a crime.

Ex. 39 at 163-64.  At trial, the following colloquy occurred when the court

apprised counsel and Petitioner of the disclosure by the juror:

> **THE COURT:** . . .  All right.  I need to address a couple things with you all before we bring the jury back in.  I have discovered - - and in an abundance of caution I'm going to let you all know this, because we have not at this point released the alternate juror, but that juror number 5 . . . I don't believe he disclosed to the Court's standard questions at the beginning of jury instructions that he does have a relative convicted of a crime.  So I just want to bring that to you all's attention in case we want to have our alternate stay.

> And how I know that is he disclosed it to the bailiff, so I thought I was duty-bound to let you all know.  [Juror 5] is the juror that's sitting in the third chair there.
> . . . .
> **THE COURT:** Because at this point we can retain Ms. [M] on the jury as the alternate.

> **MR. CONRAD [defense counsel]:**  We're not moving to strike him

> **THE COURT:**  Pardon?

> **MR. CONRAD:**  We're not moving to strike him.

> **MR HUTCHINS:**  Neither are we.

> **THE COURT:** Okay.  Perfect.  All right.  So, Mr. Strickland, are you still satisfied with your lawyer's representation?

> **THE DEFENDANT:**  Absolutely.

> **THE COURT:** Okay.  Are there any witnesses that you wanted called that were not?
>
> **THE DEFENDANT:**  No, ma'am.
>
> **THE COURT:** Any that you wanted investigated that were not?
>
> **THE DEFENDANT:** No, ma'am.
>
> **THE COURT:** All right.  Are you satisfied with the strategy in your attorney's representation?
>
> **THE DEFENDANT:** Absolutely.
>
> **THE COURT:** Okay.  Thank you, sir.

Ex. 3 at 256-57 (volume II of August 7, 2012, trial).

Although the post-conviction court found the claim was not sufficiently pled, the court did note that when the issue arose at trial, trial counsel appeared to make a tactical decision not to move to strike the juror and replace him with Ms. M as the alternate.  Petitioner advised the trial court that he was in accord with his counsel's strategic decisions and was "absolutely" satisfied with his representation.  Petitioner has failed to demonstrate that the decision of the state court to deny this claim of ineffective assistance of counsel was based on an unreasonable determination of the facts in light of the record or was contrary to any federal law as determined by the Supreme Court.  Accordingly, habeas relief on Ground 5 should be denied.

## <u>Ground 6: Failing to Object to Photo Lineup</u>

In this ground, Petitioner contends that defense counsel rendered ineffective assistance by failing to object to showing the jury the photographic lineup where, he argues, the photos appeared as "mug shots." ECF No. 1 at 23. The claim was raised in Petitioner's amended Rule 3.850 motion but was denied as insufficient as a matter of law. Ex. 37 at 68. Even so, at the conclusion of the evidentiary hearing, the post-conviction court addressed the claim by stating:

> There was no proof that the photos looked like "mug shots." In this lineup that the State introduced today in State's 3 looks like any other lineup that I've seen. And the testimony today was that it came from the DAVID, or driver's license data base.

Ex. 39 at 165. Defense counsel testified at the hearing that he did not find anything improper or overly prejudicial in the photo lineup showing photos of men with mustaches. Ex. 39 at 116. Defense counsel also testified at the evidentiary hearing that the photos were from the drivers license database. *Id.* Officer Wester testified at trial, however, that the photos were obtained by using a "program" that produced photographs of persons similar to Petitioner. Ex. 3 at 203 (volume II of August 7, 2012, trial). Wester did not identify the program. At sidebar, counsel and the court discussed the fact that the computer program, which was not identified for the jury, was CJIS, which contains photographs of persons who have been

arrested.  *Id.* at 206.  However, the jury never heard that the photographs were taken from a criminal arrest database and there was no information on the photos identifying the source.

Regardless of trial counsel's erroneous recollection at the evidentiary hearing as to the origin of the photographs, the post-conviction court was correct in finding that the photographs did not resemble mugshots or bear any markings that would suggest they were mugshots.  The photo lineup was admitted into evidence at the evidentiary hearing as State's Exhibit 3.  Ex. 19 at 174; (exhibit attached at the conclusion of Ex. 39).  In the six black and white photos, one man appears to be wearing a polo shirt with a collar, one man is wearing a white T-shirt, and four men are wearing dark T-shirts.  *Id.*  The subjects of the photos are not posed in front of a backdrop indicating their height and there is no placard showing the date or the agency taking the photographs.  Even though the photos are not driver's license photos, they appear similar to such photos and do not suggest a prior arrest of Petitioner.  *See, e.g.,* Fuster v. State, 480 So. 2d 173, 174 (Fla. 3d DCA 1985) (holding that photographs are properly admissible if they do not in themselves or by means of other testimony suggest a prior arrest of the accused).  Defense counsel is not deficient for

failing to make a meritless objection.[8]  <u>Denson</u>, 804 F.3d at 1342;

<u>Freeman</u>, 536 F.3d at 1233.  Accordingly, the state post-conviction court's

denial and the appellate court's affirmance of denial of the ineffective

assistance claim on this ground was not unreasonable or contrary to any

federal law as determined by the Supreme Court.  Habeas relief on Ground

6 should be denied.

### Ground 7: Failing to Object to Student Status

Petitioner contends that defense counsel rendered ineffective

assistance by failing to object to identification of the victims as college

students.  ECF No. 1 at 26.  He argues that identifying the two victims as

college students was unfairly prejudicial because it had no probative value

and only served to garner sympathy for the victims and create animosity

toward Petitioner.  *Id.*  The claim was raised in his amended postconviction

motion, Ex. 35 at 58, but was summarily denied.  Ex. 38.  At the conclusion

of the evidentiary hearing, the judge addressed the previously denied

---

[8] Even if the photo lineup had been suggestive, and even if counsel had objected at trial, the trial court would have been required to consider whether, under the totality of the circumstances, the identification was nonetheless reliable.  *See* <u>Netting v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:14-cv-872-J-39JBT, 2018 WL 829208, at *9 (M.D. Fla. Feb. 12, 2018) (citing <u>Neil v. Biggers</u>, 409 U.S. 188, 199, 93 S. Ct. 375, 382, 34 L.Ed.2d 401 (1972), *certificate of appealability denied sub nom.* <u>Netting v. State</u>, No. 18-14052-D, 2019 WL 1377024 (11th Cir. Mar. 20, 2019), and <u>Cikora v. Dugger</u>, 840 F.2d 893, 895 (11th Cir. 1988)).

claim, stating, "And then also I've already denied Count 9 [of the amended Rule 3.850 motion], related to calling the victims 'college students.' There's really no basis to object to that." Ex. 39 at 166. The state First District Court of Appeal affirmed.

Respondent argues that defense counsel was not deficient because the evidence was relevant and probative in that it explained how the two victims knew each other and gave some context as to why they were leaving a bar popular with college students. ECF No. 11 at 31. Under section 90.403, Florida Statutes, "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." Thus, for relevant evidence to be inadmissible, the prejudice must be both unfair and must "substantially" outweigh the probative value. Petitioner's claim only speculates that the jury would look with favor on two college students who leave a college bar in the early morning hours. Petitioner's claim also speculates that the jury would be biased in favor of fraternity members. This unsupported speculation does not demonstrate a reasonable probability sufficient to undermine confidence that, but for counsel's failure to object, the outcome of the trial would have been different.

The state court adjudication of this claim has not been shown to be contrary to any federal law as determined by the Supreme Court or an unreasonable determination of the facts in light of the record. Habeas relief on Ground 7 should be denied.

### Ground 8: Cumulative Error

Petitioner contends that cumulative error deprived him of a fair trial. ECF No. 1 at 27. He raised this claim in his amended Rule 3.850 motion, Ex. 35 at 24. The state post-conviction court found no constitutional violations in the claims raised by Petitioner. The Eleventh Circuit has rejected similar "cumulative error" claims asserted in federal habeas actions. *See, e.g.,* Insignares v. Sec'y, Fla. Dep't of Corr., 755 F.3d 1273 (11th Cir. 2014). The Court in Insignares explained:

> Insignares claims cumulative error deprived him of a fair trial. Under the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). "This court has made clear that where '[t]here [is] no error in any of the [trial] court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit.' " *Id.* (*quoting* United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) (per curiam)) (alterations in original). Because we have found no error in the issues on appeal, Insignares has failed to show that the state judge lacked a reasonable basis to deny his cumulative-error claim.

*Id.* at 1284. Even if this "cumulative error" claim was cognizable on federal habeas review, the claim provides no basis for federal habeas relief in this case. The state post-conviction court found no basis for post-conviction relief and the State appellate court affirmed.

Because each of the habeas claims fails, the cumulative error claim must fail. Morris, 677 F.3d at 1132 (assuming without deciding that a cumulative error claim is cognizable, cumulative error claim must fail as none of the individual claims of error or prejudice has any merit, and therefore the Court has nothing to accumulate). *See also* Maynard v. Sec'y, Dep't of Corr., No. 16-16040-C, 2017 WL 4457447, at *3 (11th Cir. May 30, 2017) (not reported); Finch v. Sec'y, Dep't of Corr., 643 F. App'x 848, 853 (11th Cir.) (unpublished), *cert. denied*, Finch v. Jones, 137 S. Ct. 519 (2016); Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (unpublished). Because neither the State courts nor this Court has found any constitutional error in the issues raised by Petitioner, Ground 8 alleging cumulative error should be denied.

### Ground 9: Ineffective Assistance of Appellate Counsel—Jury Selection

In this ground, Petitioner asserts that appellate counsel rendered ineffective assistance by failing to argue on direct appeal trial court error in rejecting defense counsel's objection to a challenge for cause during jury

selection.  ECF No. 1 at 28.  He argues that during voir dire, the court granted the State's challenge for cause over objection and excused a juror who Petitioner contends was rehabilitated.  Petitioner, however, fails to provide any details or explain the basis for the challenge for cause, and fails to specify or provide record references to show in what way the juror was rehabilitated.

Petitioner raised this ineffective assistance of appellate counsel claim in a petition for writ of habeas corpus filed in the First District Court of Appeal pursuant to Florida Rule of Appellate Procedure 9.141(c).  Ex. 10. The appellate court was provided only with a brief excerpt of proceedings, which appears to have occurred sometime after the juror was excused, in which defense counsel argued to the trial judge that granting the challenge for cause gave the State "additional peremptories."  The prosecutor responded that it did not give the State additional peremptories because the State had remaining peremptory challenges.  Ex. 11 (transcript pagination p. 135-36).  The excerpt provided to the appellate court did not make clear if voir dire was concluded when that discussion occurred or if the State ultimately exercised all its peremptory challenges.  The excerpt provided with the petition in the state appellate court also did not contain the colloquy during which the juror was excused for cause and, thus,

provided no basis on which the appellate court could determine whether appeal of the issue would have had any merit.  The appellate court denied the petition without comment.  Ex. 16.

Claims of ineffective assistance of appellate counsel are governed by the same standards as applied to trial counsel under Strickland.  Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).  Appellate counsel is not ineffective for failing to raise a meritless issue on appeal.  *See* Shere v. Sec'y, Fla. Dep't. of Corr., 537 F.3d 1304, 1311 (11th Cir. 2008) (citing Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001)).  Petitioner has not demonstrated that the claim, even if raised by counsel on appeal, would have had merit.  Thus, Petitioner has provided no basis on which this Court can find that the adjudication by the First District Court of Appeal was contrary to any federal law as determined by the Supreme Court or was an unreasonable determination of the facts in light of the record.  Habeas relief on Ground 9 should be denied.

## Ground 10: Failure to Appeal Denial
## of Motion For Judgment of Acquittal

Petitioner contends that appellate counsel rendered ineffective assistance by failing to argue trial court error in denying the motion for judgment of acquittal.  ECF No. 1 at 30.  He argues that appellate counsel should have argued on appeal that the State failed to prove the perpetrator

used an actual gun in the robbery because both victims testified the gun

could have been a toy.  *Id.*  at 31.

At trial, the first victim testified that after the perpetrator asked for

money and then tried to sell them magazines and DVDs, the perpetrator

said "what if I showed you a gun now."  Ex. 3 at 93 (volume I of August 7,

2012, trial).  He further testified, "And then at that point when we see the

gun, that's when we decide, okay, well, here's some money."  *Id.* at 93-94.

The victim testified that the perpetrator pulled the gun from his side and

"[t]hat's where I was able to see the gun."  *Id.* at 94.  On cross-examination,

the first victim testified he did not know if the gun was a revolver and that

he did not know if it was real, "but it was a gun pointed at me."  Ex. 3 at 109

(volume I of August 7, 2012, trial).  On redirect, the victim testified he

believed the gun was real.  *Id.* at 114.

The second victim testified that when he and his friend refused to

give the perpetrator money, "he seemed to get a little more upset and then

pulled the gun."  *Id.* at 119.  He believed it was a real gun because "it

looked like it."  *Id.*  On cross-examination, the second victim testified that he

did not know the difference between a revolver and an automatic pistol, but

that the gun "looked a lot like a real gun."  *Id.* at 137.  On redirect, he

explained that the gun did not have an orange tip like toy guns do and the

gun did not look like a paintball gun.  *Id.* at 141.  He said, "It was normal - -

it was a handgun" and that at the time he believed it was real.  *Id.*

Counsel argued in his motion for judgment of acquittal after the case-

in-chief that the state failed to prove that the gun was real, which is an

element of robbery armed with a firearm.  Ex. 3 at 227 (transcript

pagination, volume II, trial of August 7, 2012).  The trial court stated,

> **THE COURT:**  All right.  I think - - well, I don't profess to
> saying I know everything, but I think that there's a big difference
> between someone having their hand in their pocket acting like
> they have a weapon concealed in a pocket or concealed in
> something that they could threaten with versus somebody
> stating, I saw him pull a gun.
>
> Now, the question from the defense perspective was,
> well, you didn't know if it was real or a toy or anything like that.
>
> I mean, if you follow the logical reasoning, then, if every
> case where there's a charge of a firearm and the firearm is not
> discharged, then you could say, well, it just looked like a gun,
> but there's no proof that it was a gun.  So you can't have that
> charged.  And that's not - - that's not what it says.  That's not
> the instruction.

Ex. 3 at 233-34 (volume II of August 7, 2012, trial).  The trial court went on

to find that the case cited by defense counsel was distinguishable and that

it was up to the jury to decide from the evidence and the instructions if the

perpetrator pulled a firearm.  *Id.* at 234.  Counsel renewed the motion for

judgment of acquittal at the close of the evidence, and it was again denied.

*Id.* at 253-54.  Denial of the motion for judgment of acquittal was not raised

on direct appeal.  This claim of ineffective assistance of appellate counsel was raised in Petitioner's Rule 9.141(c) petition to the state district court of appeal and denied without discussion.  Ex. 10 at 9, Ex. 16.

In this Court, Petitioner cites Augustine v. State, 143 So. 3d 940 (Fla. 4th DCA 2014), just as he did in the Rule 9.141(c) petition in state court. ECF No. 1 at 31; Ex. 10 at 9.  In Augustine, the Florida court held that it was improper argument for a prosecutor to say the jury could convict the defendant of carrying a firearm based on "the victim's belief that Augustine carried a firearm."  *Id.* at 941.  The facts of Augustine are not set forth in the decision, so it is unknown if Augustine brandished a weapon or merely stated or implied that he had weapon.  However, the court in Augustine cited Butler v. State, 602 So. 3d 1303, 1305 (Fla. 1st DCA 1992) (noting the state may not prove that defendant carried a firearm during a robbery "by presenting evidence of nothing more than the victim's subjective belief that the defendant possessed a 'firearm' ").  In Butler, the perpetrator robbed a drycleaner while carrying a pair of pants that concealed his hand. Butler, 602 So. 3d at 1304.  The victims saw a long object under the pants and assumed the defendant had a gun, but never saw a gun or the outline of a gun.  *Id.*

In the present case, the victims saw the perpetrator holding what each testified was a gun.  Contrary to Petitioner's argument that both victims testified it could have been a toy, the second victim never testified it could have been a toy.  When defense counsel asked, "So you couldn't tell us whether it was a real gun or a toy," the second victim answered, "It looked a lot like a real gun."  Ex. 3 at 137 (volume I of August 7, 2012, trial).

Based on the testimony at trial that the perpetrator brandished a gun that looked like a firearm and which the victims believed was a firearm, and viewing the evidence in a light most favorable to the State,[9] the trial court properly denied the motion for judgment of acquittal.  Thus, appellate counsel was not deficient for failing to appeal a meritless claim.  <u>Shere</u>, 537 F.3d at 1311.  Accordingly, the adjudication of the state district court in denying this claim of ineffective assistance of appellate counsel was not unreasonable in light of the evidence and was not contrary to any federal law as determined by the Supreme Court.  Ground 10 should be denied.

---

[9] Under Florida law, a defendant who moves for judgment of acquittal admits the facts in evidence and every conclusion favorable to the State that may be reasonably inferred from the evidence.  <u>Williams v. State</u>, 261 So. 3d 1248, 1252 (Fla. 2019).  "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction."  *Id.* (quoting <u>Pagan v. State</u>, 830 So. 2d 792, 803 (Fla. 2002)).

## **Ground 11: Failure to Appeal Evidentiary Rulings**

In his last ground, Petitioner asserts that appellate counsel rendered ineffective assistance by failing to raise on direct appeal trial court error in certain evidentiary rulings.  ECF No. 1 at 33.  Specifically, he argues that the trial court prohibited defense counsel from inquiring regarding the number of persons who fit the description of the perpetrator and the fact that the officer did not save the list of suspects he generated in a computer search.[10]  *Id.* at 33-34.  Petitioner also argues that the trial court did not allow defense counsel to pursue questions regarding other automobiles that may have matched the description given by the victims.

Petitioner raised this claim in his state petition alleging ineffective assistance of appellate counsel.  Ex. 10 at 11.  The district court of appeal denied the claim without explanation.  Ex. 16.  Petitioner has not demonstrated that the claims, if raised on appeal, would have had merit or that this state court adjudication denying the claim of ineffective assistance of appellate counsel was unreasonable.

At trial, Officer Wester testified that based on witness statements from the victims, he used a "standard database" to search for makes and

_____

[10] As in many of Petitioner's grounds and in Respondent's answer, record references for the specified objections and rulings are, unfortunately, not cited.

models of vehicles that matched the description given by the victims of the

perpetrator's vehicle and the partial license tag number.  Ex. 3 at 188

(volume 11 of August 7, 2012, trial).  The search returned information on a

green Ranger truck and license tag with the same first three letters as

described by the victim.  *Id.* at 189.  Based on that information, he obtained

a photograph of Petitioner that was associated with the vehicle, and his

characteristics matched the description given by the victims.  *Id.* at 190.

Officer Wester then performed a computer search for photographs of

individuals matching Petitioner's description for use in a photographic

lineup of males with similar characteristics.  *Id.*

On cross-examination of Officer Wester, defense counsel asked him

about the database that produced information on the Ranger vehicle.  *Id.* at

198.  The following questions and answers were given about the computer

search:

> **Q** And what you do when you click on that box for automobiles is you're trying to get a partial tag; right?
>
> **A** Yes, sir.
>
> **Q** And in this case, you had three letters of a tag?
>
> **A** Yes, sir.
>
> **Q** And it was your understanding you were looking for a Florida tag?
>
> **A** Yes, sir.
>
> **Q** And that's based on the reports that you got?

**A** Yes, sir.

**Q** And you got a bunch of different pieces of cars?

**A** Right, that's correct, yes, sir.

**Q** Now, do you have a list of those cars that came up?

**A** No, sir, I do not.

**Q** And if you ran that same search today, would you get a different list?

**MR. HUTCHINS [prosecutor]**: Objection, your Honor. Relevance.

**MR. CONRAD [defense counsel]**: It's going to the fact that - - it's a lack of evidence issue.

**MR. HUTCHINS:** Well, Judge, no. It's not relevant, whether he ran it today, what would come up today versus what would come up then.

**THE COURT:** Sustained.

**BY MR. CONRAD:**

**Q** The list of cars that you got, all right, do you have that list?

**A** I do not.

**MR. HUTCHINS:** Objection. Cumulative. He's already answered that.

**THE COURT:** Sustained.

**BY MR. CONRAD:**

**Q** Did you destroy that list?

A No, sir.

**Q** Did you write any of that down?

**A** No, sir.

**Q** Is there any way to recover that list?

**A** No, sir, I don't - -

**Q** Okay. And if we tried to run it again today, we would get a different list?

**MR. HUTCHINS:** Objection, your Honor.

**THE COURT:** That's been sustained.

**. . . .**

**BY MR. CONRAD:**

Q Do you know how many automobiles came up with that letter B-J-M?

**A** No, sir, I don't' recall with any certainty.

**Q** And you don't have a description of any of those?

**A** No, sir.  It - - no, I don't.

**Q** You don't know how many of them were pickups?

A No, sir.

**Q** You don't know how many of them were green pickups?

**MR. HUTCHINS:** Objection.  Cumulative, you Honor?

**THE COURT:** Overruled.

**THE WITNESS:** No, sir.

Ex. 3 at 199-202 (volume II of August 7, 2012, trial).  It can be seen that even though counsel was not allowed to ask the witness to speculate on whether a new search would produce the same result, counsel was allowed to elicit testimony that the search was not preserved and that it produced a "bunch of different" vehicles, but the witness could not say how many were green pickups.  During closing argument, defense counsel argued that the officer picked the first person who matched the description as the suspect. Ex. 3 at 293 (volume II of August 7, 2012, trial).  He also argued, "We don't know how many other Ford Ranger pickup trucks had a tag with BJM on

them.  We don't know how many tags there are in Florida with BJM on it.
We don't know how many tags belong to Ford Ranger pickup trucks with
BJM on it." *Id.*

Trial courts have sound discretion on issues of admission of
evidence.  A court's ruling on admission of evidence will not be reversed
unless there has been a clear abuse of discretion.  <u>Ray v. State</u>, 755 So.
2d 604, 610 (Fla. 2000).  Even if it is shown that the trial court abused its
discretion, the error is subject to harmless error analysis.  <u>Gosciminski v.
State</u>, 132 So. 3d 678, 699 (Fla. 2013).  The trial court did not find relevant
the officer's testimony concerning whether the same search, if run at the
time of trial, would produce the same result.  Petitioner did not provide the
state district court of appeal any basis on which to find that testimony would
have been relevant and that, but for appellate counsel's failure to raise the
issue on appeal, there existed a reasonable probability of a different result
at trial.  Moreover, defense counsel was able to make the point that Officer
Wester did not keep a copy of the search and could not tell the jury how
many other vehicles might have matched the description given by the
victims.  Appellate counsel was not required to appeal a meritless claim or
to appeal every nonfrivolous issue or every issue that "might have had
*some* possibility of success."  <u>Valle v. Moore</u>, 837 So. 2d 905, 908 (Fla.

2002) (emphasis in original) (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 751-53

(1983)).  Petitioner has not shown that the state court's denial of this aspect

of his claim of ineffective assistance of appellate counsel was

unreasonable or contrary to any federal law as determined by the Supreme

Court.

Also on cross-examination, defense counsel questioned Officer

Wester about the computer search that produced the photographs used in

the photo lineup after the officer located a photograph of Petitioner

associated with the green Ford Ranger:

> **Q** Okay.  And so then you took that picture [of Petitioner]; right?
>
> **A** Yes, sir.
>
> **Q** And you plugged it into a program?
>
> **A** Yes, sir.
>
> **Q** And you looked for people that looked like Mr. Strickland?
>
> **A** Yes, sir.
>
> **Q** And how many of those came up?
>
> **A** I don't recall.  Several.  I know a bunch would.
>
> **Q** More than 50?
>
> **A** Probably, yes, sir.
>
> **Q** Okay.  And where are those pictures?
>
> **MR. HUTCHINS:** Judge, I'm going to object to this right now.  It's not relevant.
>
> **MR. CONRAD:** The fact that he doesn't have the pictures of the other people?

> **THE COURT:** (indicating)  Let's take a sidebar, please.
>
> . . . .
>
> (**Sidebar conference as follows:)**
>
> **. . . .**
>
> **MR. CONRAD:** I didn't ask him where the pictures came from.  I asked how many pictures came up.  And he said over 50.  And I asked where the pictures were and - -
>
> **MR. HUTCHINS:**  I - -
>
> **MR. CONRAD:** I get to make my argument.  And the fact that he didn't - - he disregarded those pictures and didn't print them out or didn't - - or destroyed them or whatever he did with them, the fact that he didn't preserve that evidence goes to the lack of evidence in this case. . . .

Ex. 3 at 203-04.  Both counsel continued to make their arguments, with the prosecutor insisting that the fact that the other similar photographs were not retained was not relevant because the officer prepared the photo lineup according to standard procedures.  *Id.* at 203-11.  Defense counsel argued that he wanted the jury to hear that the other 50-plus similar photographs were not retained.  He argued that if that testimony is excluded, he is unable to argue to the jury that the ones chosen for the lineup were not, in fact, the most similar to Petitioner's photo.  *Id.*  The trial court ruled that questions about the other photographs not used in the lineup would not elicit relevant testimony, but defense counsel could inquire how Officer Wester picked the other photos used in the photo lineup.  *Id.* at 210, 212. When cross-examination resumed, the following testimony was given:

> **Q** Okay.  I believe when you left off, Officer, you said that about 50 came up?
>
> **A** I'm sure there would be several come up, yes, sir.
>
> **Q** And you picked six?
>
> **A** Yes, sir.
>
> **Q** Did anybody help you pick those six out?
>
> **A** No, sir.
>
> **Q** That was your subjective determination; right?
>
> **A** yes, sir.

Ex. 3 at 212 (volume II of August 7, 2012, trial).

Petitioner did not make clear to the state district court of appeal why appellate counsel was obligated to appeal this ruling.  Further, Petitioner has not demonstrated that the state court's denial of this aspect of the claim was unreasonable and that, but for failure to appeal this ruling, there is a reasonable probability—that is, one sufficient to undermine confidence in the outcome—of a different result.  Moreover, the jury had before it the photo lineup and, in deciding if the victim's identification of Petitioner from the lineup was reliable, the jury could determine if the photo lineup fairly depicted individuals sufficiently similar to Petitioner.  Petitioner has not demonstrated entitlement to habeas relief on this claim and Ground 11 should be denied.

## <u>Conclusion</u>

Based on the foregoing, Petitioner James Lamar Strickland is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## <u>Certificate of Appealability</u>

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to

whether a certificate should issue by objections to this Report and

Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed.

R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on January 22, 2020.


**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this
Report and Recommendation, a party may serve and file specific
written objections to these proposed findings and recommendations.
Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon
all other parties.  A party may respond to another party's objections
within fourteen (14) days after being served with a copy thereof.  Fed.
R. Civ. P. 72(b)(2).  Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not**

**control**.  **If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**