IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES LAMAR STRICKLAND,

    Petitioner,

v.                                      CASE NO. 4:19:cv2-RH-CAS
SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____/

## ORDER DENYING THE PETITION AND
## GRANTING A CERTIFICATE OF APPEALABILITY

By petition for a writ of habeas corpus under 28 U.S.C. § 2254, James Lamar Strickland seeks relief from his Florida state-court robbery conviction. The petition is before the court on the magistrate judge's report and recommendation, ECF No. 21, and the objections, ECF No. 24. I have reviewed de novo the issues raised by the objections.

The report and recommendation correctly concludes that the petition should be denied. This order accepts the report and recommendation. This order adopts the report and recommendation as the court's opinion on issues not addressed in

Case No. 4:19cv2-RH-CAS

this order. And this order also adopts the report and recommendation as the court's further opinion on the issues addressed in this order, except to the extent of any inconsistency with this order.

I

The report and recommendation accurately sets out the governing legal standards. Three are critical here.

First, a federal habeas court may set aside a state court's ruling on the merits of a petitioner's claim only if the ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the ruling "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A long and ever-growing line of cases addresses these standards. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86 (2011); *Williams v. Taylor*, 529 U.S. 362 (2000); *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117 (11th Cir. 2012).

Second, to prevail on a claim of ineffective assistance of counsel, a petitioner must show both deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Prejudice is a reasonable probability of a different result—a showing sufficient to undermine confidence in the outcome. *Id*. at 694.

Third, to prevail on a claim that the state improperly withheld information favorable to the defense, thus denying due process, *see Brady v. Maryland*, 373 U.S. 83 (1963), there must be a reasonable probability that disclosure of the information would have changed the result. This again requires a showing sufficient to undermine confidence in the outcome. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999).

II

Someone—the state says it was Mr. Strickland—robbed two victims on January 16, 2011 as they walked near a street. The victims provided this information to officers: the robber was driving a green truck, was wearing a hoodie, said he lived in his truck, asked for money, offered to sell the victims pornography, and finally, when the victims said no, robbed them at gunpoint. One victim said the green truck had a Florida license plate beginning with "BJM." The same victim later positively identified Mr. Strickland at a photo lineup and then at trial.

Mr. Strickland committed an unrelated theft on the next day, January 17. A search of his green truck on that day turned up no hoodie, no pornography, and no gun. The truck had a Georgia license plate beginning with "BJM."

Law enforcement did not immediately connect the January 16 robbery with the January 17 theft. It apparently was January 21—five days after the robbery—

when law enforcement focused on Mr. Strickland as the suspected robber. The investigating officer did not attempt to search Mr. Strickland's truck, even though the officer had been told that the robber claimed to live in his truck. If that was true, the robber might well have had nowhere else to keep a hoodie, pornography, or gun. But the truck was in Georgia, perhaps 30 miles away, and the officer apparently believed searching it would require a Georgia search warrant.

The robbery and theft were charged in different cases. Mr. Strickland entered a guilty plea in the much-less-serious theft case. He went to trial in the robbery case. The robbery prosecutor apparently did not personally know about, and thus did not disclose, the January 17 search that turned up no hoodie, pornography, or gun. The officer's investigative report said—incorrectly—that there had been no such search.

As it turns out, Mr. Strickland was represented by the same attorney in both cases. The attorney apparently received discovery in the theft case that showed that the truck was searched on January 17 and that no hoodie, pornography, or gun was found. But with his focus on the January 16 robbery, the attorney did not connect the dots. This apparently was an oversight, perhaps attributable in part to the erroneous report that there had been no search. In any event, even good, experienced attorneys sometimes make mistakes. This was one.

III

The state-court record establishes deficient performance by Mr. Strickland's attorney or the state's unconstitutional failure to turn over favorable information. Or both.

If the robbery and theft cases are treated as related, so that the state's disclosure of the information in the theft case satisfied its duty to disclose in the robbery case, then the attorney rendered deficient performance by overlooking the information about the search.

On the other hand, if the robbery and theft cases are treated as separate, then the state has no excuse for its failure to separately disclose the information in the robbery case—not just in the theft case. The state's duty to disclose favorable information is not limited to information known to the prosecutor personally. Officers made the connection between the two cases and were obligated to turn over the favorable information about the search as part of the discovery not only in the theft case but also in the robbery case.

In any event, Mr. Strickland's expert testified in the state collateral proceeding, without contradiction, that in defending the robbery case, the attorney should have found and realized the importance of the information provided through discovery in the theft case, separate or not.

IV

The issue, then, is prejudice.

The subject of what was in Mr. Strickland's truck drew prominent attention during the trial. As it turns out, Mr. Strickland's argument was substantially weaker than it could have been. Mr. Strickland argued with vigor that officers never found a hoodie, pornography, or gun. But with no search to point to, the argument suggested officer negligence more than Mr. Strickland's innocence—there was no way to know whether the materials were or were not in the truck. The jury might have excused the officer for not conducting a search, reasoning the materials could easily have been moved in the five days or so between the robbery and Mr. Strickland's arrest. And more importantly, officer negligence was not the issue. The jury could have concluded that with no evidence of what was or was not in the truck, the defense argument about failure to locate a hoodie, pornography, or gun was nothing more than speculation.

These arguments would have been different had the jury been provided truthful information about the results of the search that occurred one day after the robbery. Whether the difference is sufficient to undermine confidence in the outcome is a close question. Two critical points support the state.

First, Mr. Strickland drove a green truck with a license plate beginning with "BJM." It was a Georgia plate, not a Florida plate, but the crime occurred perhaps 20 miles from the Florida-Georgia line; plates from both states are common in this area. That a witness focusing on the numbers might not accurately identify the

state is hardly surprising. And the three-letter sequence on the plate, provided before there was a suspect, is highly incriminating. Eyewitnesses sometimes incorrectly identify faces. But the odds of hitting three successive letters on a green truck but getting the wrong green truck are surely long. It is not easy to undermine confidence in an outcome based on evidence of this kind.

To be sure, the state did not take a screen shot when it pulled up information on other vehicles with these letters in sequence. Perhaps there were other vehicles, even green trucks, with these letters. But Mr. Strickland has not pointed to any, even today. The burden at trial was on the state. The burden on collateral review is on Mr. Strickland.

Second, the search evidence is persuasive only if Mr. Strickland lived in his truck. If he lived there, and if he committed the robbery, one would expect the hoodie, pornography, and gun still to be in the truck the next day. Where else would he put them? But if he did not live in the truck, one would not be at all surprised if these items were removed and taken into his residence before the next day. Mr. Strickland did not allege or prove in his state collateral proceeding, and has not alleged in this federal habeas petition, that he in fact lived in his truck. That he told the victims he lived in his truck is scant evidence that he actually lived there; this might well have been a panhandler's ruse to obtain a voluntary payment

or a robber's effort to have the victims pull out their wallets, thus making a robbery easier. Here, too, the burden of proof is now on Mr. Strickland.

The state postconviction court ruled that the search evidence would not have made a difference. The conclusion is not ironclad. But the conclusion is not "contrary to" and did not involve "an unreasonable application of" clearly established federal law, and the conclusion was not "based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d)(1)-(2). Under the deferential standard applicable in this federal habeas proceeding, Mr. Strickland is not entitled to relief.

V

Rule 11 of the Rules Governing § 2254 Cases requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See Miller-El v. Cockrell*, 537 U.S. 322, 335-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see also Williams v. Taylor*, 529 U.S. 362, 402-13 (2000) (setting out the standards applicable to a § 2254 petition on the merits). As the Court said in *Slack*:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were " 'adequate to deserve encouragement to proceed further.' "

529 U.S. at 483-84 (quoting *Barefoot*, 463 U.S. at 893 n.4). Further, to obtain a certificate of appealability when dismissal is based on procedural grounds, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484.

Mr. Strickland has made the required showing only as set out below.

## VI

For these reasons and those set out in the report and recommendation,

IT IS ORDERED:

1. The report and recommendation is accepted.

2. The clerk must enter judgment stating, "The petition is denied with prejudice."

3. A certificate of appealability is granted on this issue: whether the petitioner is entitled to relief based on his attorney's ineffective assistance as to, or

the state's failure to disclose, that the petitioner's truck was searched the day after the robbery at issue and no hoodie, pornography, or gun was found.

4. The clerk must close the file.

SO ORDERED on June 9, 2020.

s/Robert L. Hinkle  
United States District Judge